**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**JASON ROBERT SKURSKI,**
                    **Plaintiff,**

    v.                                                          5:13-CV-01402

**CAROLYN W. COLVIN,**
**ACTING COMMISSIONER OF**
**SOCIAL SECURITY,**

                    **Defendant.**
_____

**THOMAS J. McAVOY,**
**Senior United States District Judge**

# DECISION & ORDER

## I. INTRODUCTION

Jason Robert Skurski ("Plaintiff") brings this action pursuant to § 205(g) of the Social Security Act ("SSA"), 42 U.S.C. § 405(g), to review a final determination by the Commissioner of Social Security ("Commissioner") denying his application for benefits. Plaintiff contends that the Administrative Law Judge ("ALJ") erred by failing to request a residual functional capacity ("RFC") statement from his treating physician. The Commissioner argues that the ALJ's decision is supported by substantial evidence and made in accordance with the correct legal standards. Pursuant to Northern District of New York General Order No. 8, the Court proceeds as if both parties had accompanied their briefs with a motion for judgment on the pleadings. For the reasons that follow, Plaintiff's motion is granted and the matter is remanded to the Commissioner.

1

## II. BACKGROUND

The Court assumes familiarity with the facts and procedural history of the case, as well as the undisputed medical record. For purposes of this decision, the following facts are relevant.

The ALJ determined that Plaintiff had the severe impairment of degenerative disc disease. Tr. 13. In reaching her RFC determination,[1] the AJL "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and 416.929 and SSRs 96-4p and 96-7p." Tr. 13. The objective medical evidence that the AJL considered included Plaintiff's magnetic resonance images (MRIs) in January 2011 and April 2012;[2] Plaintiff's treatment by clinical staff at Syracuse Orthopedic Specialists, including his physician, Dr. Hafer;[3] and the findings and opinion of

---

[1] The ALJ wrote:

After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except he can only occasionally climb ramps and stairs; he can never climb ladders, ropes, or scaffolding; he can occasionally balance, stoop, kneel, crouch, and crawl; he should avoid hazards; and he is limited to simple routine and repetitive tasks.

Tr. 13.

[2] (showing "claimant's spondylothisthesis progressed from a grade 1, 6mm L5 over Sl, to 8mm, but it did not indent the thecal sac")

[3] (showing that in January and February 2001, Plaintiff was prescribed pain medication; in February 2011, he started a series of 3 lumbar injections from which he felt some relief; in May 2011, clinical staff "discussed an L5-Sl laminectomy, discectomy, and posterior fusion, but [Plaintiff] was informed the failure rate was 50%," and Plaintiff received a from Dr. Hafer indicating that he was "100% disabled"/ temporarily disabled; a checkup in August 2011 that was unremarkable; a March 2012 examination during which Plaintiff complained of of worsening lower back pain and tingling and numbness in his right leg; and an April 2012 office visit during which Dr. Hafer again discussed surgery and noted that Plaintiff was 100% disabled)

2

the consultative examiner, Dr. Kalayni Ganesh.[4] Tr. 14-15.

> The ALJ stated that she
>
> gave little weight to the characterization of Dr. Hafer's description of the claimant as 100% disabled because there is no direct correlation between Dr. Hafer's description of disability and disability evaluation under Social Security Act regulations, as opposed to [the] worker's compensation disability threshold, indicated since Dr. Hafer stated the disability was "temporary." In addition, the record shows Dr. Hafer used the claimant's past work, which "involved heavy lifting," (Ex. 7F/4) as a threshold for work the claimant was unable to perform. In this regard, I concurred with the characterization of the claimant's impairment, and proceeded to explore other work at exertional capacities in the sedentary range.

Tr. 14-15.

The ALJ gave Dr. Ganesh's observations "partial weight." Tr. 15. In this regard, she gave "little weight" to his characterization that the claimant was "moderately" limited due to the vagueness of the description, while giving "greater weight" to the assertion that there are impairments to Plaintiff's exertional and non-exertional function. Tr. 15. The ALJ concluded:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairment could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.

Tr. 14

And:

> In sum, the above residual functional capacity assessment is supported by the medical imaging (MRI's) and the claimant's treatment record in which he went untreated, and unmediated, for seven months. The sedentary exertional threshold I adopted for the claimant's residual functional capacity accommodates the claimant by limiting him from lifting more heavy objects, and causing aggravation of pain

---

[4](characterizing Plaintiff as "moderately" limited, and making observations about impairments to Plaintiff's exertional and non-exertional functioning)

3

from the spondylothisthesis, which is supported by the consultative examination observations from Dr. Ganesh.

Tr. 15.

## III. DISCUSSION

Plaintiff contends that the ALJ erred by not seeking a medical source statement from Dr. Hafer regarding his RFC. The Court agrees.

"Social Security Administration rules provide that '[m]edical reports should include ... [a] statement about what you [*i.e.*, the Claimant] can still do despite your impairment(s) ... Although we will request a medical source statement about what you can still do despite your impairment(s), the lack of the medical source statement will not make the report incomplete.'" *Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 33 (2d Cir. 2013) (summary order) (quoting 20 C.F.R. §§ 404.1513(b)(6), 416.913(b)(6)). "[T]he Second Circuit has held that it is not *per se* error for an ALJ to make a disability determination without having sought the opinion of the claimant's treating physician." *Sanchez v. Colvin*, 2015 WL 736102, at *5 (S.D.N.Y. Feb. 20, 2015)(citing *Tankisi*, 521 F. App'x at 33–34; *Pellam v. Astrue*, 508 F. App'x 87, 90 (2d Cir. 2013) (summary order)). However, "[a]s the Second Circuit noted in *Tankisi*, the SSA's regulations as to the need for seeking a treating physician's opinion contain directives that may be seen as competing." *Id.*

> On the one hand, they provide that the Social Security Administration "will request a medical source statement about what you can still do despite your impairment(s)." [*Tankisi*], 521 F. App'x at 33 (quoting 20 C.F.R. §§ 404.1513(b)(6), 416.913(b)(6)). As the Second Circuit noted, this "plain text ... does not appear to be conditional or hortatory: it states that the Commissioner '*will* request a medical source statement' containing an opinion regarding the claimant's residual capacity. The regulation thus seems to impose on the ALJ a duty to solicit such medical opinions." *Id.* (quoting 20 C.F.R. §§ 404.1513(b)(6), 416.913(b)(6)) (emphasis added in *Tankisi*). On the other hand, as the Second Circuit noted, the regulation states that "the lack of the medical source statement will not make the report incomplete." *Id.* (quoting

4

> 20 C.F.R. §§ 404.1513(b)(6), 416.913(b)(6)). Further, as the Circuit observed, the regulation provides that "'[m]edical reports *should* include ... [a] statement about what you can still do despite your impairment,' not that they *must* include such statements." *Id.* (quoting 20 C.F.R. §§ 404.1513(b)(6), 416.913(b)(6)) (emphasis added in *Tankisi*).

*Id.*

In *Tankisi*, although the ALJ did not request formal opinions on Tankisi's RFC from her treating physicians, the medical record in that was "quite extensive" and included an assessment of Tankisi's limitations from her treating physician. 521 F. App'x at 34. The Circuit concluded that "[g]iven the specific facts of this case, including a voluminous medical record assembled by the claimant's counsel that was adequate to permit an informed finding by the ALJ, we hold that it would be inappropriate to remand solely on the ground that the ALJ failed to request medical opinions in assessing residual functional capacity." *Id.*

The instant case, by contrast, does not contain an extensive medical record. Moreover, in the face of Dr. Hafer twice indicating that Plaintiff was 100% disabled, the record does not appear to contain adequate information sufficient to permit the ALJ to disregard the treating physician's opinion. *See Tankisi*, 521 F. App'x at 33 ("Although the RFC is assessed using 'all the relevant evidence in [the] case record,' the medical opinion of a treating physician is given 'controlling weight' as long as it is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and is not inconsistent with other substantial evidence in the record.") (quoting 20 C.F.R. § 404.1545(a)(1) and citing 20 C.F.R. §§ 404.1527(c)(2)); *see also id.* ("Even if the treating physician's opinion is contradicted by other substantial evidence, and so is not controlling, it may still be entitled to significant weight 'because the treating source is inherently more familiar with a

5

claimant's medical condition than are other sources.'")(quoting *Schisler v. Bowen*, 851 F.2d 43, 47 (2d Cir.1988)); Woodmancy v. Colvin, 577 F. App'x 72, 74 (2d Cir. 2014)(Summary Order)("If the ALJ chooses not to afford [a treating physician's] opinion controlling weight, then the ALJ must consider the following factors in deciding what weight to assign the opinion: (1) examining relationship; (2) treatment relationship, including its length, nature and extent; (3) supportability with medical evidence; (4) consistency with the record as a whole; (5) specialization of the examiner; and (6) any other relevant factors." )(citing 20 C.F.R. § 404.1527(c)(1)-(6)). This case does not sit on all fours with *Tankisi*, and because there are questions whether there was sufficient evidence or sufficient reasons to disregard Dr. Hafer's "100% disabled" assessment, remand is necessary to further develop the record.

### III. CONCLUSION

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings is GRANTED, and the Commissioner's motion for judgment on the pleadings is DENIED. The decision of the Commissioner is REVERSED and this case is REMANDED, pursuant to sentence four of 42 U.S.C. § 405(g), for a determination consistent with this Decision and Order.

**IT IS SO ORDERED.**

Dated: September 24, 2015

Thomas J. McAvoy
Senior, U.S. District Judge